UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS AFL-CIO,
LOCAL 1245,

        Petitioner,

   v.

CITIZENS TELECOMMUNICATIONS
CO. OF CALIFORNIA, INC. dba
FRONTIER COMMUNICATIONS,

        Respondent.

NO. CIV. S-06-0677 WBS DAD

MEMORANDUM AND ORDER RE:
MOTION TO COMPEL ARBITRATION
AND MOTION TO DISMISS

----oo0oo----

       Pursuant to 29 U.S.C. § 185(a), petitioner International Brotherhood of Electrical Workers AFL-CIO, Local 1245, filed this petition to compel respondent Citizens Telecommunications Company of California, Inc. to arbitrate unilateral changes in the retiree health benefits program. Petitioner bases its request on the terms of a collective bargaining agreement ("CBA") entered into between respondent and petitioner. Currently before the court are (1) petitioner's motion to compel arbitration and (2) respondent's motion to

1

dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) (lack of subject matter jurisdiction).

I.   Factual and Procedural Background

For the purpose of these motions, the parties do not dispute the following facts. (Resp't Mot. to Dismiss 1.)  In October, 2005, respondent sent a letter to its retirees regarding medical benefits for the upcoming year.  (Thomas Decl. Ex. B.) This letter informed retirees that in light of changes in Medicare benefits, specifically the new prescription drug coverage effective on January 1, 2006, the company had elected to discontinue retiree medical coverage for former employees who are Medicare-eligible.  (Id.)  The letter further informed retirees that those who were not Medicare-eligible could still sign up for respondent's benefit plan, although as of January 1, 2006, respondent would no longer subsidize the retiree medical premium. (Id.)

Respondent notified petitioner of these changes on November 17 and 30, 2005.  (Pet. ¶ 8.)  Shortly thereafter, petitioner filed a grievance, No. 05-08, in which it alleged that these "unilateral" changes to the retiree medical plan reduced the overall level of benefits and thus violated the plain terms of the CBA.  (Id. ¶ 9; id. Ex. B.)  The grievance called for expedited arbitration of the dispute, also pursuant to the terms of the CBA.  Respondent refused, and continues to refuse, to arbitrate the matter.  (Id. ¶¶ 10, 12.)

The provisions at issue come from the CBA entered into by respondent and petitioner on behalf of "all employees of the Accounting, Data Processing, Commercial (Call Center), Plant

2

(including Engineering), and Traffic Departments throughout the telephone system . . . of the Company." (Id. ¶ 4; id. Ex. A at 2.)  This agreement, effective from October 1, 2004 through September 30, 2008, states in Article 24 ("Employee Benefit Programs") that:

> The Citizens Utilities Medical Plan (including . . . Retiree Medical) . . . shall be provided for all eligible employees in accordance with the terms of said plans.  The Company may make changes, additions, or deletions to these plans, and my drop or add plans, provided:
> (a) That the changes do not reduce the overall level of benefits,
> (b) The changes apply to a majority of Citizens Utilities employees covered under such plan, and
> (c) The Company provides the Union with no less than 60 days notice of any intended changes and meets to discuss these changes with the Union.
> . . .
> In the event that any dispute arises as to whether the proposed change does or does not reduce the overall level of benefits the dispute will be referred to expedited arbitration without exhaustion of the grievance procedure [described in Article 20].

(Id. Ex. A at 39-40 (Art. 24.1).)  Under the subheading "Retiree Medical Plan," the CBA simply states that "Employees hired on or before December 31, 1995 shall retain Citizens Retiree Medical with prescriptions and retiree life insurance." (Id. Ex. A at 40 (Art. 24.4).)

Having failed to convince respondent to arbitrate the dispute that has arisen with regard to these terms and the proposed changes, petitioner filed this motion to compel arbitration on April 13, 2006.  In response, respondent does not contend that the aforementioned modifications to the Retiree Medical Plan do not constitute changes that would trigger the

3

1  duty to arbitrate as specified in Article 24.1.[1]  Instead,
2  respondent argues only that petitioner lacks standing to
3  represent the interests of <u>former</u> employees who are no longer
4  members of the union.  This defense to the motion to compel
5  arbitration is also the basis for respondent's Rule 12(b)(1)
6  motion to dismiss.  <u>White v. Lee</u>, 227 F.3d 1214, 1242 (9th Cir.
7  2000) (noting that 12(b)(1) is the proper vehicle for challenging
8  plaintiff/petitioner's standing).
9  II.  <u>Discussion</u>
10      A.   <u>Petitioner's Standing to Compel Arbitration</u>
11           "Section 301(a) of the Labor Management Relations Act
12  ([LMRA]), 29 U.S.C. § 185, grants a district court jurisdiction
13  to compel arbitration under a collective bargaining agreement."
14  <u>Hotel & Rest. Employees, & Bartenders Union, Local 703 v.</u>
15  <u>Williams</u>, 752 F.2d 1476, 1478 (9th Cir. 1985).  The question for
16  the court to resolve is simply whether "the arbitration clause is
17  . . . susceptible of an interpretation that covers the asserted
18  dispute."  <u>United Steelworkers of Am. v. Warrior & Gulf</u>
19  <u>Navigation Co.</u>, 363 U.S. 574, 582-83 (1960) (further noting that
20  doubts are to "be resolved in favor of coverage").  In other
21  words, the court's role is limited to determining "questions of
22  arbitrability"--the "gateway dispute[s] about whether the parties
23  are bound by a given arbitration clause."  <u>Howsam v. Dean Witter</u>

---

[1] In a letter formally refusing petitioner's request to arbitrate the matter, respondent provided the following reasons for its decision: (1) "the Union does not currently represent these employees" and (2) the Union is not raising an issue covered by the current CBA between the parties . . . ."  (Pet. Ex. C (Jan. 13, 2006 Letter from Thomas E. Gausden to Tom Dalzell).)  However, respondent did not oppose petitioner's motion to compel for the latter reason.

4

Reynolds, Inc., 537 U.S. 79, 84 (2002).

However, as in every federal case, the petitioner who seeks a motion to compel arbitration must have standing to pursue such relief. "Standing . . . focuses on the complaining party to determine 'whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues.'" Am. Legal Found. v. FCC, 808 F.2d 84, 88 (D.C. Cir. 1987) (quoting Warth v. Seldin, 422 U.S. 490, 498 (1975)).  An individual, or an organization on its own behalf, satisfies the standing requirement by alleging (1) a concrete personal injury in fact (2) that is "fairly traceable to the challenged action of the [respondent]" and (3) likely to be redressed by the relief sought from the court. Friends of the Earth v. Laidlaw Envtl. Servs., 528 U.S. 167, 181 (2000) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).  Under certain circumstances, even when an organization has not suffered an injury in fact, it may nonetheless sue on behalf of its members and those who "possess all of the indicia of membership in [the] organization." Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 345 (1977); Am. Legal Found., 808 F.2d at 89.

Typically, a union seeking to compel arbitration pursuant to the terms of a CBA files a petition on behalf of its members who are employees of the respondent employer.  By its terms, the LMRA establishes a properly recognized union's capacity to represent its member employees in such suits. See 29 U.S.C. § 185(b) ("Any such labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States."); 29 U.S.C. § 159(a)

5

(establishing procedures for certifying a particular union as the representative of a particular group of employees). The Supreme Court has, however, held that retirees are not employees and are not members of the union. See <u>Allied Chem. & Alkali Workers of Am., Local Union No. 1 v. Pittsburgh Plate Glass Co.</u>, 404 U.S. 157, 172 (1971) ("[Retirees] are not 'employees' within the meaning of the collective-bargaining obligations of the Act . . . .") Additionally, retirees do not possess all the indicia of membership. <u>Compare</u> <u>Hunt</u>, 432 U.S. at 344-45 (recognizing the ability to elect an organization's leadership as one indicator of membership), <u>with</u> <u>Allied Chem.</u>, 404 U.S. at 174 (recognizing that the National Labor Relations Board ("NLRB") has denied retirees the right to vote in representation elections where unions are selected).[2] It follows then that a union cannot assume that it has standing as an organization to represent retirees, despite its ability to sue on behalf of member employees.

Still, the question in this case was not actually decided by the Supreme Court in <u>Allied Chemical</u>. The Court held only that an employer does not have a duty <u>under the terms of the LRMA</u> to bargain collectively with the duly recognized

---

[2] In <u>Allied Chemical</u>, a factually similar case where an employer unilaterally discontinued a retiree benefit plan when Medicare was first established in the mid-1960s, the Court held that an employer does not commit an unfair bargaining practice when it circumvents the union and negotiates directly with retirees. 404 U.S. at 188. The Court also observed that while a union can bargain for retiree benefits if the employer agrees, doing so does not saddle the union with a duty to represent retirees in future negotiations regarding the bargained for benefits. <u>Id.</u> at 182 & n.20. Instead, the Court suggested, retirees can and should sue the employer <u>directly</u> for breach of contract under section 301 when it unilaterally alters their bargained for benefits. <u>Id.</u> at 182 (citing LRMA section 301, 29 U.S.C. § 185).

6

representative of its employees before initiating "a unilateral mid-term modification of a permissive term such as retirees' benefits." Id. at 188.  It did not address the circumstances under which a union can act to enforce the terms of a CBA entered into by the union and an employer.[3]  See Textile Workers of Am., AFL-CIO, Local 129 v. Columbia Mills, Inc., 471 F. Supp. 527, 530-31 (N.D.N.Y. 1978) ("Here, unlike [in Allied Chemical], the issue is not whether the Company must bargain with the Union over the benefits of retired employees, but rather whether the Company did, in fact, contractually commit itself to provide continuous insurance coverage for retirees for the duration of their natural lives.").

Likewise, neither the Ninth Circuit nor its district courts have faced the issue presented here.  Consequently, the parties provide authority from other circuits that have dealt with the matter in a variety of ways.  On one end of the spectrum, the Third Circuit has held that "under accepted contract principles the union has a legitimate interest in protecting the rights of the retirees and is entitled to seek

---

[3] The difference between Allied Chemical and this case stems from the structure of the LRMA.  The act divides responsibility for labor relations management and entrusts the NLRB with responsibility for identifying unfair labor practices, as defined by statute.  Meanwhile, "[t]he district court is vested with limited jurisdiction pursuant to section 301 of the [LMRA]" to resolve "'[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce.'"  Amalgamated Clothing & Textile Workers Union, AFL-CIO v. Facetglas, Inc., 845 F.2d 1250, 1252 (4th Cir. 1988) (quoting 29 U.S.C. § 185(a)) (emphasis added).  Allied Chemical involved a union's claim that unilateral changes to retiree benefits as agreed to in the CBA constituted an unfair labor practice.  In contrast, the instant action involves a union's purely contractual claim that the employer violated the express terms of its CBA with the union.

7

enforcement of the applicable contract provisions." United Steelworkers v. Canron,[4] 580 F.2d 77, 80-81 (3d Cir. 1978); see also UAW v. Yard-Man, 716 F.2d 1476, 1486 (6th Cir. 1983) (noting in dicta that "[a]s a signatory to the contract [the union] could bring an action for the third party beneficiary retirees."); see also Anderson v. Alpha Portland Indus., Inc., 752 F.2d 1293, 1296 (8th Cir. 1985) (recognizing in dicta that even when retiree benefits are at stake, if a union chooses to represent the retirees, "an employer may not refuse to arbitrate its contractual obligations with the union").  However, the bulk of authority addressing the issue has adopted a rule whereby "retirees are free to make a union their agent [for taking their claims to arbitration] if they so choose." Rossetto v. Pabst Brewing Co., Inc., 128 F.3d 538, 540 (7th Cir. 1997) (emphasis added); Cleveland Elec. Illuminating Co. v. Util. Workers Union of Am., 440 F.3d 809, 817 (6th Cir. 2006) (upholding the district court's decision which required the union to "obtain the consent of the retirees before proceeding to arbitration"); Int'l Ass'n of Machinists & Aerospace Workers Local Lodge 2121 AFL-CIO v. Goodrich Corp., 410 F.3d 204, 212 (5th Cir. 2005) (holding that a union has standing under section 301 to represent retirees who expressly authorized the union to do so); Schweizer Aircraft Corp. v. Local 1752, Int'l Union, United Auto., Aerospace &

---

[4] Respondent urges the court to ignore Canron entirely because, unlike later cases from other circuits, Canron did not address whether the union had the consent of the retirees to file suit on their behalf. (Resp't Reply 3 n.1.)  However, contrary to respondent's arguments, the logical inference to be drawn from Canron's failure to mention whether the union had the consent of the retirees to sue on their behalf is that this was not a relevant factor that influenced the outcome of the case.

Agric. Implement Workers of Am., 29 F.3d 83, 87 (2d Cir. 1994) (expressing doubt that a union has standing to assert the rights of individual retirees in a dispute with a former employer); Paper, Allied-Indus., Chem. & Energy Workers Int'l Union v. UCAR Carbon Co., Inc., 368 F. Supp. 2d 548, 551 (N.D. W.Va. 2005).

   Regardless of the volume of cases requiring retiree consent, however, the Ninth Circuit, like the Third in Canron, has recognized that unions have an "undeniable interest[] in seeing that negotiated benefits are paid in accordance with the terms of collective bargaining contracts . . . ." Rehmar v. Smith, 555 F.2d 1362 (9th Cir. 1977). To fully vindicate this interest, unions need the ability to file suit for violations of the terms of the CBAs they enter into, regardless of who benefits from the union's attempt to reinstate those terms. See United Food & Commercial Workers Int'l Union, AFL-CIO v. Alpha Beta Co., 736 F.2d 1371, 1375 (9th Cir. 1984) (rejecting the employer's argument that a dispute is not arbitrable because the people impacted by the alleged violation of the CBA were no longer part of the bargaining unit). Thus, a determination that petitioner lacks standing to safeguard the rights of retirees specifically provided for in the terms of a CBA would appear to be inconsistent with the Ninth Circuit's understanding of the role and purpose of unions.

   Additionally, accepted principles of contract law provide further support for petitioner's standing in this case. Significantly, "[a] promise in a contract creates a duty in the promisor to the promisee to perform the promise even though he also has a similar duty to an intended beneficiary." Restatement

(Second) of Contracts § 305(1) (1981).  The fact that the retirees themselves might have an arguably duplicative cause of action against the employer is thus, pursuant to third-party beneficiary law, not determinative of the petitioner-union's right to file suit for a respondent-employer's alleged breach of bargained for terms affecting retirees.  Furthermore, because the promisee-employees, who actually entered into the CBA with the employer through their bargaining agent, have an enforcement right, the union, pursuant to the authority given to it in 29 U.S.C. § 185(b), has standing to assert that right.[5]  See NLRB v. Cummer-Graham Co., 279 F.2d 757, 759 (5th Cir. 1960) (recognizing that "[l]abor organizations . . . act in a representative capacity and on behalf of the employees [who] are the real parties in interest.").  An employer cannot bargain for terms in an existing CBA, terms that may have been negotiated at the expense of other benefits, and then unilaterally abandon them by claiming that the parties that actually entered into the agreement lack standing to enforce it.

At no time has respondent argued that the dispute over the changes in the Retiree Medical Plan is not a matter for arbitration pursuant to the terms of the CBA that it entered into

---

[5] Were it not for 29 U.S.C. § 185, petitioner's ability to file suit for violation of the terms of a CBA on employees' behalf would be questionable.  Compare Restatement (Second) of Agency § 363 (1957) ("An agent who makes a contract on behalf of a principal cannot maintain an action thereon in his own name on behalf of the principal . . . ."), with 29 U.S.C. § 185(a)-(b) ("Suits for violation of contracts between an employer and a labor organization representing employees . . . may be brought in any district court of the United States" and a labor organization representing these employees "may sue or be sued as an entity and in behalf of the employees whom it represents . . . .").

with petitioner.  Instead, respondent has only argued that petitioner lacks standing to enforce the terms of the CBA. Because the court has rejected this proposition and herein holds that petitioner can challenge respondent's "unilateral" adjustment of retiree benefits, an order compelling respondent to arbitrate the matter is warranted.

### B.   Attorneys' Fees

Petitioner, who will be awarded the relief sought by this motion, has also requested attorneys' fees. "[A]bsent contractual or statutory authorization, a prevailing litigant ordinarily may not collect attorneys' fees." Int'l Union of Petroleum & Indus. Workers v. W. Indus. Maint., Inc., 707 F.2d 425, 428 (9th Cir. 1983).  Still, the court may award fees "when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Id. (quotation omitted). Additionally, because federal policy favors arbitration, a less demanding "without justification" standard applies in cases involving refusals to arbitrate. United Food & Commercial Workers Union v. Alpha Beta Co., 736 F.2d 1371, 1382-83 (9th Cir. 1984) (holding that an "award of fees is appropriate when a party frivolously or in bad faith refuses to submit a dispute to arbitration or appeals from an order compelling arbitration").

Given the lack of any controlling authority on the issue presented by the parties and the discord among appellate courts on the matter, the court can hardly say that respondent's refusal to arbitrate has been in bad faith or without justification.  Consequently, attorneys' fees for this motion to compel arbitration are not warranted.

11

IT IS THEREFORE ORDERED that petitioner's motion to compel arbitration be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that respondent's motion to dismiss be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that petitioner's motion for attorneys' fees be, and the same hereby is, DENIED.

DATED:  May 17, 2006

*[signature]*
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

12